UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES WOODHEAD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-189-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEXINGTON POLICE OFFICER | ) | **MEMORANDUM OPINION** |
| ZAKARY S. RIDENER | ) | **AND ORDER** |
| INDIVIDUALLY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

During the summer of 2020, Lexington—like many cities throughout the nation—was faced with waves of public protests.[1] While participating in one of these protests, Plaintiff James Woodhead was arrested by the defendants in this action, Lexington police officers Zakary Ridener and Keith McKinney. Woodhead subsequently filed suit, alleging that the arrest violated his constitutional rights under the First, Fourth and Fourteenth Amendments to the United States Constitution, as well as various provisions of Kentucky state law. [Record No. 1, pp. 5–12]

The defendants have filed a motion for partial judgment on the pleadings, arguing that Woodhead has failed to state a viable claim under the Fourteenth Amendment, and that he has further failed to allege a viable claim for declaratory relief. [Record No. 7, p. 1] The defendants' motion will be granted because the First and Fourth Amendments control

---

[1] *Protests Continue for 18th Night in Lexington*, WKYT (updated June 14, 2020, 11:08 PM EDT), https://www.wkyt.com/2020/06/15/protests-continue-for-18th-night-in-lexington/.

- 1 -

plaintiff's federal claims, and because declaratory relief is inappropriate in these circumstances.

I.

On July 11, 2020, James Woodhead and a group of other demonstrators were engaged in a public protest in the vicinity of the LFUCG Division of Police Headquarters building in downtown Lexington, Kentucky. [Record No. 1, ¶ 16] Woodhead was moving through the crowd while the protest was occurring, using a black sharpie to mark other protestors' arms with a number to call in case of arrest. [*Id.*, ¶ 17] The plaintiff was confronted around this time by Lexington police officers Zakary Ridener and Keith McKinney, who attempted to place him under arrest. [*Id.*]

Ridener allegedly grabbed Woodhead's upper chest and shoulders while unsuccessfully attempting to use his leg to take Woodhead to the ground. [*Id.*, ¶ 18] The plaintiff began to withdraw from the officers, prompting Ridener to wrap his arm around Woodhead's to stop his retreat. [*Id.*, ¶ 19] At this point, McKinney grabbed Woodhead's upper body, using his own body as a lever to take Woodhead to the ground. [*Id.*, ¶ 20] Once taken to the ground, Ridener and McKinney handcuffed the plaintiff and placed him under arrest. [*Id.*, ¶ 21] Following the arrest, Woodhead was moved to the rear of police headquarters, searched, and placed in the Fayette County Detention Center for holding. [*Id.*, ¶ 22]

The plaintiff subsequently filed this action on July 9, 2021, asserting a host of claims relating to his arrest. [*See generally id.*] He alleges that his arrest was affected without probable cause and using excessive force, in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution. [*Id.*, pp. 5–7] Woodhead also claims that the arrest violated his First and/or Fourteenth Amendment right to engage in protected speech.

[*Id.*] Finally, he asserts state law claims for false arrest, false imprisonment, and battery. [*Id.*, pp. 9–12] Woodhead seeks compensatory and punitive damages, as well as a declaratory judgment that Ridener and McKinney's actions violated his rights. [*Id.*, pp. 8–9, 11–12, 13–14]

## II.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such motions are evaluated under the same standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim, which challenges the sufficiency of a complaint. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At this stage, Woodhead's "well-pleaded factual allegations" are accepted as true, and the Court must "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). By contrast, a complaint that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

## III.

A. **Woodhead's Fourteenth Amendment Claims**

Woodhead's Complaint raises claims sounding in arrest without probable cause, excessive force, and freedom of speech. [Record No. 1, pp. 5–7] The defendants argue that the Court should dismiss these claims to the extent that Woodhead seeks to assert them independently under the Fourteenth Amendment, rather than under the First and Fourth Amendments. [Record No. 7, pp. 3–4] Because Woodhead's claims are governed by specific constitutional provisions, his Fourteenth Amendment claims will be dismissed.

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). A plaintiff must pursue relief under the appropriate constitutional guarantee, just as a court must apply the appropriate legal standard. *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006). Accordingly, resolution of Woodhead's claims centers on whether the Fourteenth Amendment provides the appropriate constitutional protection.

First, Woodhead asserts a claim for arrest without probable cause under both the Fourth and Fourteenth Amendments to the United States Constitution. [Record No. 1, pp. 5–7] However, when the gravamen of a complaint is for arrest or detention without probable cause, the claim cannot be pursued under the Fourteenth Amendment. *See Jackson v. Cty. of Washtenaw*, 310 F.App'x 6, 7–8 (6th Cir. 2009) (noting that the plaintiff's claim alleging detention without probable cause is not viable under the Fourteenth Amendment). Instead, such a claim must be evaluated under the Fourth Amendment. *Id.* at 7 (citing *Gregory*, 444 F.3d at 750). Thus, even accepting all of Woodhead's factual allegations as true, he cannot recover for this claim under a Fourteenth Amendment theory. His ability to do so has been

foreclosed by binding Sixth Circuit precedent. *See, e.g.*, *Gregory*, 444 F.3d at 748–50. Thus, to the extent Woodhead asserts a claim for arrest without probable cause under the Fourteenth Amendment, that claim will be dismissed.

Next, Woodhead asserts a claim for excessive force in relation to his arrest, again apparently under both the Fourth and Fourteenth Amendments to the United States Constitution. [Record No. 1, ¶ 32] The Sixth Circuit has established a bright-line rule for deciding whether Fourth or Fourteenth Amendment standards govern the use of force in a given context. *Aldini v. Johnson*, 609 F.3d 858, 864–67 (6th Cir. 2010). The Fourth Amendment's reasonableness standard governs from the time of arrest until the date of a probable cause hearing and not the Fourteenth Amendment's "shocks-the-conscience" standard. *Id.* Indeed, when the facts suggest no excessive force outside the context of an arrest, a claim under the Fourteenth Amendment is not facially plausible. *See, e.g.*, *Boguslavaskaya v. O'Neill*, No. 09-6064, 2010 WL 2650420, at *3 (E.D. Pa. June 30, 2010) (granting the defendant's motion to dismiss because the Fourteenth Amendment cannot sustain the plaintiff's excessive force claim); *Btesh v. Maitland*, No. 6:10–CV–71–ORL–19DAB, 2010 WL 883642, at *4 (M.D. Fla. Mar. 5, 2010) (dismissing a plaintiff's excessive force claims under the 14th Amendment); *McClelland v. City of Modesto*, No. 09–1031, 2009 WL 2941480, at *5–6 (E.D. Cal. Sept. 10, 2009) (the plaintiff's claim arising in context of seizure, either as a detention during a search or as an arrest, was improperly pleaded under the 14th Amendment).

Here, the only alleged use of force was during the initial arrest. [*See* Record No. 1, pp. 4–5] As a result, any claim under the Fourteenth Amendment is facially implausible. *Aldini*, 609 F.3d at 864–67; *see also Ashcroft*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570).

Thus, to the extent that Woodhead seeks to bring his excessive force claim under the Fourteenth Amendment, such claim will be dismissed.

The authority the plaintiff relies on to support an alternative outcome, *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001), is distinguishable. In *Darrah*, the plaintiff alleged that she was struck in the mouth by an officer while the officer was engaged with another subject. 255 F.3d at 304. Unlike Woodhead, the *Darrah* plaintiff was not arrested at the scene of the incident. *Id.* at 305. Accordingly, the Sixth Circuit declined to determine whether the plaintiff was subjected to a Fourth Amendment seizure and examined the use of force under both Fourth and Fourteenth Amendment standards. *Id.* at 305–07. In the present case, it is undisputed that Officers Ridener and McKinney seized Woodhead during his arrest. *Torres v. Madrid*, 141 S. Ct. 989, 996 (2021) ("[A]rrests are seizures of a person."). Therefore, the Fourth Amendment controls, and any Fourteenth Amendment claim will be dismissed. *See Aldini*, 609 F.3d at 864–67.

Finally, Woodhead brings a claim sounding in freedom of speech, asserting it ostensibly under both the First and Fourteenth Amendments to the United States Constitution. [Record No. 1, ¶ 32] In this circuit, however, any claim for violation of a Fourteenth Amendment substantive due process right to free speech "'is duplicative of [a] First Amendment . . . claim.'" *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 547 (6th Cir. 2012) (quoting *Brandenburg v. Hous. Auth.*, 253 F.3d 891, 900 (6th Cir. 2001)). To the extent that a plaintiff alleges a Fourteenth Amendment claim related to his free speech claim, "[that] claim is foreclosed by controlling precedent." *Id.* Based on the foregoing, Woodhead's claim for relief under the Fourteenth Amendment is facially implausible. Accordingly, to the extent

that he seeks to assert a Fourteenth Amendment-based free speech claim, that claim will be dismissed.

In summary, because Woodhead's substantive claims are "covered by . . . specific constitutional provision[s]" it is those provisions that govern his claims, not the "rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Plaintif's Fourteenth Amendment claims will be dismissed, and his action must proceed on the First and Fourth Amendment claims alone.

### B. Woodhead's Claims for Declaratory Relief

Woodhead asks the Court to enter a declaratory judgment, declaring that the defendants' actions during the arrest violated Woodhead's rights under both federal and state law. [Record No. 1, pp. 8, 11, 13] Defendants Ridener and McKinney argue that Woodhead has failed to state a viable claim for declaratory relief under either the federal Declaratory Judgment Act, 28 U.S.C. § 2201, or the Kentucky Declaratory Judgment Act, as codified in Kentucky Revised Statutes chapter 418. Because the federal and state laws are not coexistive, the Court will address each separately.

#### 1. Federal Claim for Declaratory Relief

The federal Declaratory Judgment Act ("DJA") allows federal courts to "declare the rights and other legal relations of any interested party" in a "case of actual controversy." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" refers to the type of cases or controversies that meet Article III's justiciability requirements. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)); *see also BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993) ("The requirement of actual controversy encompasses concepts such as ripeness,

standing, and the prohibition against advisory judicial rulings."). The question in each case is whether the facts alleged "show that there is a substantial controversy . . . *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (emphasis added) (citing *Aetna Life*, 300 U.S. at 239–42).

As other courts have recognized, a declaratory judgment is inappropriate if it is used solely to adjudicate past conduct. *See, e.g.*, *Blankenship v. City of Crossville*, 2017 WL 4641799 (M.D. Tenn. 2017); *Ridge v. Campbell*, 984 F. Supp. 2d 364, 373 (M.D. Pa. 2013) (citing *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3rd Cir. 2006)). This is because past exposure to allegedly illegal conduct does not establish a present controversy if unaccompanied by any continuing effect. *Blankenship*, 2017 WL 4641799, at *5. Past harm *does* allow a plaintiff to seek damages, "but it does not entitle a plaintiff to seek injunctive or declaratory relief." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019).

A review of Woodhead's Complaint demonstrates that he is seeking a declaration based solely on the alleged use of excessive during his arrest on July 11, 2020. [Record No. 1, pp. 6–8] There are no allegations in the Complaint concerning any continuing course of conduct by the defendants. Facially, Woodhead is requesting a declaration relating solely to past conduct. *See Kanuszewski*, 927 F.3d at 406.

Woodhead seeks to avoid dismissal, arguing that there is some continuing effect because the past conduct has "chilled him from doing this protective [sic] activity again and would also chill a person of ordinary firmness."[2] [Record No. 8-1, p. 6] The Supreme Court's

---

[2] Woodhead also relies on an unpublished order from the Federal District Court for the District of Colorado to support his claim that declaratory relief may issue. [Record No. 8-1,

opinion in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is instructive in assessing this contention. In *Lyons*, the Court rejected a claim for declaratory and injunctive relief asserted by a plaintiff who allegedly had been subjected to an illegal chokehold by a police officer in the past, and that he could be again in the future. 461 U.S. at 98. Denying his claims, the Court explained that "Lyons' assertion that he may again be subject to an illegal chokehold does not create the actual controversy that must exist for a declaratory judgment to be entered." *Id.* at 108.

The same is true here. Because Woodhead seeks a declaratory judgment solely to adjudicate past conduct, there is no controversy of "sufficient immediacy and reality." *Maryland Cas. Co.*, 312 U.S. at 273. Accordingly, the plaintiff's federal claim for declaratory relief will be dismissed.[3]

### 2. State Claims for Declaratory Relief

The Kentucky DJA is similar, although not identical, to the federal iteration. The Kentucky statute allows a court to enter a binding declaration of rights so long as "an actual controversy exists." KY. REV. STAT. ANN. § 418.040 (West). Similar to the federal DJA, the actual controversy requirement is constitutional in origin. *Berger Fam. Real Est., LLC v. City of Covington*, 464 S.W.3d 160, 166 (Ky. Ct. App. 2015). Section 112(5) of the Kentucky

---

pp. 6–7] This reliance is misguided. In that case, the court granted a temporary restraining order to stop the use of chemical agents and projectiles against persons engaging in peaceful protests that were to occur *imminently*. [Record No. 8-2, pp. 4–5] The relief was aimed at preventing future illegality, not adjudicating the legality of past conduct. [*Id.*, pp. 6–7]

[3] In their Reply, the defendants ask the Court in the alternative to abstain from consideration of Woodhead's federal claim for declaratory relief in light of the pending state criminal proceedings arising from his arrest. [Record No. 9, pp. 3–4] Because the Court finds it appropriate to dismiss the plaintiff's claim outright, this opinion will not address the abstention issue.

Constitution grants jurisdiction only over "justiciable causes." *Id.* The question of justiciability focuses on whether there is a live controversy for the court to decide. *Id.* (quoting *Interactive Gaming Council v. Commonwealth ex rel. Brown*, 425 S.W.3d 107, 112 (Ky. Ct. App. 2014)).

As the Supreme Court of Kentucky has explained, an actual controversy for the purpose of the DJA "requires a controversy over *present* rights, duties, and liabilities." *Foley v. Commonwealth*, 306 S.W.3d 28, 31 (Ky. 2010) (emphasis added) (quoting *Barrett v. Reynolds*, 817 S.W.2d 439, 441 (Ky. 1991)). "A true declaratory judgment proceeding . . . is to determine legal rights *before* one person has wronged another." *Bowles v. Stilley's Ex'r*, 254 S.W.2d 504, 505 (Ky. 1953) (emphasis added). In short, claims based on past conduct alone exceed the scope of a declaratory judgment action under Kentucky law. *Paulley v. Murphy*, No. 2018-CA-001004-MR, 2019 WL 2558996, at *2 n.3 (Ky. Ct. App. June 21, 2019).

Here, Woodhead seeks two declarations based on his state law claims, both arising out of his arrest on July 11, 2020. [Record No. 1, pp. 9–13] There are no allegations concerning any continuing behavior by either defendant. Accordingly, Woodhead is requesting a declaration based solely on past conduct and thus his request should be denied. *See Bowles*, 254 S.W.2d at 505.

Woodhead relies on *Beshear v. Haydon Bridge Co.*, 416 S.W.3d 280 (Ky. 2013), to suggest an alternative conclusion. [Record No. 8-1, p. 7] But his reliance is misplaced. In *Haydon Bridge*, the Supreme Court of Kentucky addressed the availability of retrospective injunctive relief for money damages in the context of sovereign immunity. 416 S.W.3d at 284. Nowhere in *Haydon Bridge* did it hold (or even hint) that declaratory relief is available for claims based solely on past conduct. Because Woodhead seeks a declaratory judgment based

solely on past conduct that does not affect present rights or duties, his claims exceed the scope of declaratory judgment actions authorized by Kentucky law. *See Foley*, 306 S.W.3d at 31; *Paulley*, 2019 WL 2558996, at *2 n.3. Therefore, the state claims for declaratory relief will be dismissed.

**IV.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendants' motion for partial judgment on the pleadings [Record No. 7] is **GRANTED**.

2. Plaintiff Woodhead's claims for relief asserted under the Fourteenth Amendment to the United States Constitution are **DISMISSED**, with prejudice.

3. Plaintiff Woodhead's federal and state law claims for declaratory relief are **DISMISSED**, with prejudice.

Dated: September 8, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky